LaROSE, Judge.
The School Board of Hillsborough County appeals an administrative order reversing its decision to deny a request by Tampa School Development Corporation, d/b/a/ Trinity School for Children (Trinity), to consolidate the charter contracts of its two schools. The School Board argues that the administrative law judge (ALJ) lacked subject matter jurisdiction and erred in reversing the School Board’s denial. It also contends that section 1002.33(6)(h), Florida Statutes (2011), violates the Florida Constitution to the extent that it impinges on the School Board’s authority to run the public school system in Hillsbor-ough County. We affirm.
Facts
Trinity currently operates two charter schools in Tampa pursuant to contracts with the School Board. One is an elementary school (Trinity School); the second is a middle school (Upper School). Both are excellent institutions, having received A grades from the Florida Department of Education (DOE).[1] Trinity established its *921 first charter school in 1999 as a school for grades kindergarten through eight. In 2004, when a building across the street became available, the School Board allowed Trinity to split its one charter school into two in order to receive federal grants available for new charter schools. Although a separate charter contract applied to each school, the two well-performing schools were operated by the same governing board, shared facilities and staff, and were considered by the community to be a single school.
In 2008, after several years of struggling with the unexpected administrative costs of running two schools, Trinity sought to reconsolidate its two charter contracts with the School Board. Trinity could save about $120,000 per year by eliminating duplicative administrative tasks such as preparing two sets of financial audits, two accountability reports, and two school improvements plans. The Charter School Supervisor for the School Board advised Trinity that, according to DOE, Trinity could combine the schools:
After consulting with the Department of Education regarding your request to combine Trinity School for Children and Trinity Upper School, the district has been advised that you are able to combine the two schools. I will present your request to the Hillsborough County School Board regarding the combination of the two schools during your schools’ contract renewal process.
Trinity’s charter contracts were not scheduled for renewal until 2010, but Trinity believed that consolidation was a foregone conclusion. Indeed, when it came time to submit a renewal contract in May 2010, the School Board sent Trinity only one draft contract that covered both schools. Trinity and the School Board began to negotiate the terms of that single document. The School Board did not advise Trinity that it had to submit a new charter school application. See § 1002.33(3)(a).
In June 2010, implementation of an unanticipated statutory change altered the administrative fee that a charter school must pay to a sponsoring school board. As a result, if the School Board approved Trinity’s proposed consolidation, the School Board would lose approximately $60,000 per year in fees from Trinity. Retreating from its earlier assurances, the School Board rejected consolidation, advising Trinity in writing that there is no educational benefit for students by combining the two schools.
Thereafter, Trinity and the School Board attempted, unsuccessfully, to mediate this matter before DOE. See § 1002.33(6)(h).[2] Mediation failed. In April 2011, Trinity requested a hearing before the Division of Administrative Hearings (DOAH). See id. The School Board moved to dismiss for lack of jurisdiction. The ALJ denied the motion. After an evidentiary hearing, he granted Trinity’s consolidation request.
Analysis
At the outset, we address DOAH’s subject matter jurisdiction over Trinity’s consolidation request. Section 1002.33(6)(h) provides, in part, as follows:
The terms and conditions for the operation of a charter school shall be set forth *922 by the sponsor and the applicant in a written and contractual agreement, called a charter. The sponsor shall not impose unreasonable rules or regulations that violate the intent of giving charter schools greater flexibility to meet educational goals.... The administrative law judge may rule on issues of equitable treatment of the charter school as a public school, whether proposed provisions of the charter violate the intended flexibility granted charter schools by statute, or on any other matter regarding this section except a charter school application denial, a charter termination, or a charter nonrenewal.
If the School Board’s rejection of Trinity’s consolidation request was “a charter school application denial, a charter termination, or a charter nonrenewal,” DOAH lacked jurisdiction.[3] It was none of these. Indeed, the School Board’s letter advising Trinity of its rejection hardly allows such a facile characterization.
We agree with the ALJ that Trinity’s request was an effort to modify existing charter contracts. As such, the statutory bar to DOAH’s jurisdiction was inapplicable. As the ALJ reasoned:
[Sjection 1002.33(7)'(c) shows a legislative intent that an existing charter school may modify its original charter without having to provide a new application. Section 1002.33(7)(c) provides that “[a] charter may be modified during its initial term or any renewal term upon the recommendation of the sponsor or the charter school’s governing board and the approval of both parties to the agreement.” The plain meaning of the term “modification” means, in relevant part, “the making of a limited change in something; also the result of such change.” Merriam-Webster Dictionary, http://www.merriam-webster. corn/ dictionary/modification. Thus, the legislature has provided an existing charter school with the authority to seek a modification of its charter. Because of [sic] the issue brought forward by Trinity School occurs in the context of an existing charter and is a dispute concerning the charter school statute, subject matter jurisdiction is proper under section 1002.33(6)(h).
Tampa Sch. Dev. Corp., d/b/a Trinity Sch. For Children, No. 11-2183, at *2, 2011 WL 6328412 (Fla. Div. Admin. Hearings Oct. 25, 2011).
The procedural posture in which this matter came before the ALJ establishes that Trinity was not applying for a new charter. Moreover, the School Board’s decision does not qualify as a charter termination or nonrenewal. This dispute by the terms of section 1002.33(6) was not exempt from the ALJ’s consideration. The ALJ properly exercised jurisdiction.
We now address whether the ALJ erred in granting the requested consolidation. He did not; competent, substantial evidence supported his decision. We fail to see how consolidation would not inure to the benefit of Trinity’s students. The ALJ found that Trinity’s “request to combine the two charter schools into one charter is appropriate and consistent with the flexibility that the legislature has provided to charter schools, and meets the express guides for charter schools.” Id. at 5. Section 120.68(10), Florida Statutes (2012), provides:
If an administrative law judge’s final order depends on any fact found by the administrative law judge, the court shall not substitute its judgment for that of the administrative law judge as to the *923 weight of the evidence on any disputed finding of fact. The court shall, however, set aside the final order of the administrative law judge or remand the case to the administrative law judge, if it finds that the final order depends on any finding of fact that is not supported by competent substantial evidence in the record of the proceeding.
We will not substitute our judgment if the ALJ’s findings are supported by competent, substantial evidence. Competent, substantial evidence, sufficient to sustain a finding of an administrative agency, is evidence that is sufficiently relevant and material that a reasonable mind might accept as adequate to support the conclusion reached. De Groot v. Sheffield, 95 So.2d 912 (Fla.1957) (en banc); Fla. Bd. of Med. v. Fla. Acad. of Cosmetic Surgery, Inc., 808 So.2d 243 (Fla. 1st DCA 2002). . The ALJ concluded:
The facts clearly showed that both of the charter schools operate and function as one school, sharing many of the same resources. Further, it was undisputed that both Trinity School charters provide an excellent education for their students and that combining the two charters into one charter will result in efficiency of resources and save the charter schools approximately $125,000.00 a year. One of the legislature’s express guiding principles is that charter schools “[pjromote enhanced academic success and financial efficiency by aligning responsibility with accountability.”
Tampa Sch. Dev. Corp., d/b/a Trinity Sch. For Children, No. 11-2183, at *5, 2011WL 6328411 (Fla. Div. Admin. Hearings Oct. 25, 2011). The final order was supported by competent, substantial evidence. It belied the School Board’s conclusion that consolidation would be devoid of educational benefit to the students. Accordingly, we affirm on this issue.
Finally, we conclude that section 1002.33(6)(h) is constitutional. The School Board’s effort to raise this issue before the ALJ was feeble. As a result, our record on this issue is sparse. We are mindful that the ALJ lacked jurisdiction to declare the statute unconstitutional. See Key Haven Associated Enters., Inc. v. Bd. of Trs. of Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982), superseded by § 253.763(2), Fla. Stat., on other grounds as noted in Bowen v. Fla. Dep’t of Envtl. Regulation, 448 So.2d 566, 568-69 (Fla. 2d DCA 1984), approved, 472 So.2d 460 (Fla. 1985). Perhaps the parties would have been better served had the School Board raised this issue first in circuit court. See id. (holding circuit court may entertain declaratory action on statute’s validity in appropriate circumstances where statute being implemented by agency is claimed to be facially unconstitutional). Although the constitutional issue could have been better developed below, see Rice v. Dep’t of Health Rehabilitative Servs., 386 So.2d 844, 849 (Fla. 1st DCA 1980), we may pass on the constitutionality of a statute when it is necessary for reviewing administrative action. See id. We will not shun our duty.
Section 1002.33(6)(h) does no violence to article IX, sections 2 and 4[4] of our *924 constitution. Cf. Sch. Bd. of Volusia Cnty. v. Acads. of Excellence, Inc., 974 So.2d 1186, 1191-93 (Fla. 5th DCA 2008) (holding section 1002.33(6)(c) allowing DOE to approve or deny charter school application did not violate article IX, section 4(b) of constitution conferring public school control and operation on school board). The School Board holds the authority to operate, control and supervise all free public schools within the school district. The ALJ’s decision does not diminish that constitutional role. Whether Trinity runs its middle and elementary schools under one or two charter contracts, the School Board retains the right to operate, control, and supervise the provision of educational services to the students. It bears repeating that the ALJ’s decision did not interfere with the School Board’s ability to deny a charter application or terminate a charter contract. See id. at 1193. We see no constitutional impediment to the ALJ’s decision.
Affirmed.
ALTENBERND and NORTHCUTT, JJ., Concur.

. In 2011, the legislature enacted legislation regarding high-performing charter schools. See § 1002.331, Fla. Stat. (2011); Ch.2011-232, § 1, at 3451, Laws of Fla. (effective July 1, 2011). The statute is not applicable to the dispute before us and we do not opine on whether Trinity's two schools would satisfy the definition of a high-performing charter school. See § 1002.331(1). We note that the statute allows the sponsor of such high-performing schools to consolidate the schools under a single charter; School Board approval does not appear to be necessary. See § 1002.331(2).

. Section 1002.33(6)(h) provides, in part, as follows:
The Department of Education shall provide mediation services for any dispute regarding this section subsequent to the approval of a charter application and for any dispute relating to the approved charter, except disputes regarding charter school application denials. If the Commissioner of Education determines that the dispute cannot be settled through mediation, the dispute may be appealed to an administrative law judge appointed by the Division of Administrative Hearings.

. The School Board posits that Trinity’s dissatisfaction with the rejection of the proposal to consolidate should have been submitted to the DOE Charter School Appeal Commission. See § 1002.33(6)(c).

. These sections provide, in pertinent part, as follows:
SECTION 2. State board of education.— The state board of education shall be a body corporate and have such supervision of the system of free public education as is provided by law_
[[Image here]]
SECTION 4. School districts; school boards.— '
[[Image here]]
(b) The school board shall operate, control and supervise all free public schools within the school district....
*924 The thrust of the School Board’s argument is directed at section 4.